UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WARREN OLIVER,

        Plaintiff,

v.                              Case No. 3:11-cv-964-J-37MCR

OFFICER HARDEN,[1] et al.,

        Defendants.

## **ORDER**

### **I. Status**

Plaintiff Warren Oliver initiated this case, *pro se,* by filing a Civil Rights Complaint (Doc. #1) pursuant to 42 U.S.C. § 1983 on September 26, 2011. He is proceeding as a pauper. The Defendants that have been served, to date, are Officer Harden, Barry Reddish, Officer Wood, Lt. Swain, and Lt. Brown. Two Defendants, Sgt. McCal and Sgt. Davis, have not been served; however, Plaintiff has asked that he be allowed to obtain further information concerning these Defendants, through discovery, in order to be able to provide information to the Court to effect service of process upon these Defendants. See Doc. #35.

---

[1] The Clerk shall correct the name of Officer Hardy to Officer Harden on the docket. Additionally, the Clerk shall correct the name of Officer Woody to Officer Wood on the docket. See Defendants' Motion to Dismiss (Doc. #19) at 1 n.1.

Defendants' [Harden, Reddish, Wood, Swain, and Brown] Motion to Dismiss (Doc. #19) (hereinafter Motion to Dismiss) was filed on January 16, 2012. Plaintiff failed to file a response. See Order (Doc. #6).

Plaintiff Oliver names the Defendants in their individual capacities. Complaint at 1, 11. Plaintiff claims that the Defendants were deliberately indifferent to a substantial risk of serious harm when the correctional officers and the Warden failed to monitor the inmates in the Day Room at Union Correctional Institution (hereinafter UCI) and failed to apply the proper restraints on the inmates, in violation of the Eighth Amendment to the United States Constitution. Id. at 8. As relief, Plaintiff seeks compensatory and punitive damages and unspecified injunctive relief. Id. at 11.

## II. The Complaint

In the Complaint, Plaintiff alleges the following. On May 7, 2011, while Plaintiff was confined at UCI, he was escorted to a scheduled event in the Day Room by Officers Wood, Harden, Sgt. McCal and an unnamed officer. Complaint at 8. Although an institutional rule requires that the inmates be placed in full restraints, the inmates were not placed in full restraints. Id. Inmate Robert Olin slipped out of his handcuffs and assaulted Plaintiff with the handcuffs. Id. The inmates were not monitored, and a white screen in front of the Day Room blocked the officers'

ability to view the Day Room from the Officers' Station. Id. The officers paid inmate Robert Olin to assault Plaintiff Oliver. Id. at 8-9.

Inmate Olin has a history of assaulting inmates while the victim inmates are in handcuffs and shackles. Id. at 9. Many inmates have been assaulted and stabbed due to the lack of supervision and the failure to properly restrain inmates. Id. Additionally, inmates are supposed to be monitored at all times. Id.

Plaintiff requested the videotape for May 7, 2011, but his request was ignored. Id. He was covered in blood when he exited the Day Room. Id. Plaintiff had cuts and bruises on his face from the assault, and his medical record will reflect these injuries. Id. After the assault, Robert Olin, on May 8, 2011 and May 9, 2011, called his family and told them how he had assaulted Plaintiff Oliver. Id.

Lt. Swain, Sgt. Davis, and Warden Reddish knew about the risk to the health and safety of the inmates because they are shift supervisors and the Warden. Id. at 9-10. Defendant Reddish has received many complaints and was obliged to direct the officers to remove the white screen from in front of the Officers' Station and Day Room, and he should have directed the officers to monitor the inmates. Id. at 10.

The videotape will show that the inmates were not monitored, and a white sheet/shield was placed in front of the Day Room,

blocking the Officers' Station. Id. at 10. Since the officers cannot see inside the Day Room from the Officers' Station, an officer has to stand outside of the Day Room to actually monitor the inmates in the Day Room. Id. Many inmates have complained about the lack of supervision and the inadequate restraints. Id. Plaintiff is still suffering from physical, emotional and mental pain. Id.

### III. Exhaustion

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court. The Eleventh Circuit has stated:

> Before considering the merits of this case, we must address a threshold matter. According to 42 U.S.C. § 1997e(a), enacted as part of the Prison Litigation Reform Act (the "PLRA"),
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> The PLRA's effective date was April 26, 1996; because the prisoners filed their complaint after this date, the PLRA applies. Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000). A district court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies. Cf. Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). . . .

Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004).

Defendants contend that Plaintiff has not exhausted his administrative remedies with respect to his claim that the officers paid inmate Olin to assault him.[2]  See Complaint at 8-9. Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted).

The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. at 216.  However, "the PLRA exhaustion requirement is not jurisdictional[.]" Woodford v. Ngo, 548 U.S. at 101. See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter").

This Court has said, "[t]he defense of exhaustion is properly raise[d] in a motion to dismiss as a 'matter of judicial administration.'" Bentley v. White, No. 2:07-cv-573-FtM-29DNF, 2009 WL 248242, at * 3 (M.D. Fla. Jan. 30, 2009) (not reported in F.Supp.2d) (citation omitted).  As a result, the Court may look

---

[2] Although Plaintiff did not include this particular claim in the Statement of Claim, Complaint at 8, since he did include the claim in his Statement of Facts, id. at 8-9, the Court will consider the Defendants' Motion to Dismiss as to this claim.

5

beyond the pleadings by the parties to determine issues of fact with regard to the exhaustion defense. See Bryant v. Rich, 530 F.3d at 1374-75 ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'") (footnote and citations omitted).

Discussing an unenumerated motion to dismiss under 12(b), Fed.R.Civ.P., based on failure to exhaust administrative remedies, the Eleventh Circuit states:

> That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic. "'Federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules.'" Ritza, 837 F.2d at 369 (quoting 5C Wright & Miller, *supra*, § 1360 at 77). For instance, courts may decide motions to dismiss that are "'closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration.'" Id.; see e.g., Int'l Ass'n of Entrepreneurs of Am. v. Angoff, 58 F.3d 1266, 1271 (8th Cir. 1995) ("While pre-answer motions are ostensibly enumerated in Fed.R.Civ.P. 12(b), district courts have the discretion to recognize additional pre-answer motions, including motions to stay cases within federal jurisdiction when a parallel state action is pending.").

Bryant v. Rich, 530 F.3d at 1375 (emphasis added). The Eleventh Circuit concludes that "exhaustion should be decided on a Rule 12(b) motion to dismiss[.]" Id. (citation omitted).

The Eleventh Circuit recently explained that "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Serv., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted). However, "[s]ection 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . .'" Id. at 1219 (citation omitted).

Here, the grievance and administrative appeal filed by Plaintiff did not serve the intended purpose of the exhaustion of administrative remedies statute to alert prison officials to a problem and to give the prison officials the opportunity to resolve the matter internally. Although Plaintiff Oliver grieved the matter of lack of supervision of the Day Room and the problem of a screen blocking the officers' view of the Day Room from the control room, the grievance and administrative appeal did not allege that officers paid an inmate to attack Plaintiff. See Exhibits attached to the Complaint. The grievance submitted by Plaintiff did not state or suggest that officers paid inmate Olin to attack him. Indeed, Plaintiff failed to alert the prison officials of the problem; thus, the officials were not provided with the opportunity to address the problem and resolve the problem internally. See Toenniges v. Ammons, No. 1:09-CV-165 (WLS), 2011 WL 867548, at *4 (M.D. Ga. Feb. 22, 2011), report and recommendation adopted by

Toenniges v. Ammons, No. 1:09-CV-165 (WLS), 2011 WL 867540 (M.D. Ga. Mar. 14, 2011) (not reported in F.Supp.2d).

Plaintiff did not comply with the letter and purpose of § 1997e(a)'s exhaustion requirement. See Parzyck v. Prison Health Serv., Inc., 627 F.3d at 1219. Therefore, Defendants' Motion to Dismiss for Plaintiff's failure to exhaust administrative remedies is due to be granted with respect to the claim that officers paid inmate Robert Olin to assault Plaintiff Oliver.

## IV.  Motion to Dismiss

This Court looks to the allegations in the complaint when reviewing a 12(b)(6) motion. The Eleventh Circuit explained:

> Generally, under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To survive a 12(b)(6) motion to dismiss, the complaint "does not need detailed factual allegations," Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Simply, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

8

relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

### V. Defendants Swain and Reddish

Defendants Swain and Reddish assert that Plaintiff has named them as Defendants merely because they are supervisors.  The Eleventh Circuit has explained:

> A supervisor can be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes

9

>           the constitutional violation or where there is
>           a causal connection between his actions and
>           the constitutional violation that his
>           subordinates commit. <u>Braddy v. Fla. Dep't of
>           Labor and Emp't Sec.</u>, 133 F.3d 797, 802 (11th
>           Cir. 1998). A causal connection can be
>           established if a supervisor had the ability to
>           prevent or stop a known constitutional
>           violation by exercising his supervisory
>           authority and he fails to do so. <u>Keating v.
>           City of Miami</u>, 598 F.3d 753, 765 (11th Cir.
>           2010).

<u>American Federation of Labor and Congress of Indus. Organizations v. City of Miami, FL</u>, 637 F.3d 1178, 1190 (11th Cir. 2011).

Plaintiff asserts that Defendants Swain and Reddish were aware of the risk to the health and safety of the inmates because many inmates complained about the lack of supervision and the inadequate restraints. Plaintiff alleges that Defendant Reddish received many complaints and should have directed the officers to remove the white screen from in front of the Officer's Station and Day Room and should have directed the officers to monitor the inmates.

Although respondeat superior is a theory of liability that is not available for claims raised pursuant to 42 U.S.C. § 1983, here, Plaintiff alleges that many complaints were made about the lack of supervision, the failure to monitor inmates, and the inadequate restraints. Whether Plaintiff will be able to show a history of widespread abuse in the security system at UCI is a question left for another day.

Plaintiff is asserting that these Defendants failed to act in the face of numerous complaints about the lack of security. In

essence, he is claiming that these supervisory officials were put on notice of the need to monitor inmates, remove the white screen blocking the correctional officers' view of the inmates, the inadequate restraints that were being used on the inmates allowing them to slip their restraints, and the overall lack of supervision allowing for inmate attacks. In particular, Plaintiff states that inmate Olin had a history of assaulting inmates while they were restrained, and these Defendants failed to protect Plaintiff from inmate Olin.

Here, Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. at 570. He has claimed that there was a pervasive problem which was brought to the actual attention of these Defendants. Therefore, Defendant Swain and Defendant Reddish's Motion to Dismiss will be denied with respect to the Defendants' assertion that Plaintiff's claim against them is simply based on a theory of respondeat superior.

Defendants Swain and Reddish, in the heading on page 2 of the Motion to Dismiss, contend they are entitled to qualified immunity. They offer nothing in support of this assertion, other than their assertion that Plaintiff was attempting to hold them responsible based on a theory of respondeat superior. Since the Court has rejected Defendants' assertion that Plaintiff is relying on a theory of respondeat superior, the Defendants are not entitled to qualified immunity.

## VI.  Defendants Brown, Wood, and Harden

With regard to Defendants Brown, Wood, and Harden, Defendants claim that Plaintiff has failed to state a claim for failure to protect against them.  First, they assert that Plaintiff has failed to state any allegations against Defendant Brown in the body of the Complaint.  Upon review of the Complaint, Plaintiff has failed to present any operative facts supporting a claim against Defendant Brown.  Vague and conclusory allegations will not support a claim pursuant to 42 U.S.C. § 1983.  Therefore, Defendant Brown will be dismissed from this action.

Defendants Wood and Harden assert that Plaintiff Oliver has failed to sufficiently explain how they knew of the threat to Plaintiff presented by inmate Olin.  On the contrary, Plaintiff states that the inmates were required to be placed in full restraints, but were not, and specifically, inmate Olin was not properly restrained. He also alleges that the Defendants failed to monitor the inmates in the Day Room, allowing a white screen to remain in place, blocking their view of the Day Room.  Plaintiff Oliver also asserts that Inmate Olin has a history of assaulting inmates who are restrained.  Plaintiff also contends there is a history of widespread abuse because many inmates have been assaulted and stabbed due to the lack of supervision and inadequate restraints.

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994) (citing <u>Helling v. McKinney</u>, 509 U.S. 25 (1993); <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991); <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)), the Supreme Court recognized that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." The Court rejected an objective test for defining deliberate indifference, choosing instead to require that suits against prison officials for failure to protect must satisfy a subjective requirement. Specifically, the court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments.". . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id</u>. at 837-38.

In this case, Plaintiff is alleging that the Defendants knew of and disregarded an excessive risk to inmate health or safety. He contends that the Defendants failed to alleviate this significant risk by failing to adequately restrain inmate Olin; failing to properly supervise and monitor the inmates in the Day Room; by leaving a white screen up in front of the Day Room,

blocking the view of the Day Room; and, by allowing inmate Olin, who has a history of assaulting restrained inmates, to attack Plaintiff by failing to adequately restrain inmate Olin and by failing to properly monitor inmate Olin while he was in the Day Room.

In Rodriguez v. Sec'y for the Dep't of Corr., 508 F.3d 611, 616-17 (11th Cir. 2007) (footnote omitted), the Eleventh Circuit explained:

> The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, 114 S.Ct. at 1976 (citing various courts of appeals); see Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) ([I]t is well settled that a prison inmate has a constitutional right to be protected . . . from physical assault by other inmates."). "[H]aving stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government, and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833, 114 S.Ct. at 1977.
>
> A prison official violates the Eighth Amendment when he actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner. See Farmer, 511 U.S. at 829, 837, 844, 114 S.Ct. at 1974, 1979, 1982-83; see also Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003); Hale v. Tallapoosa County, 50 F.3d 1579, 1582-83 (11th Cir. 1995). As with any other claim brought under § 1983, to succeed, the inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation. See Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982); see also

LaMarca v. Turner, 995 F.2d 1526 (11th Cir. 1993).

The issue "under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Id. at 617 (citations omitted). In order to avoid Eighth Amendment liability, prison officials might show: (1) that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger; (2) that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent; or (3) that they responded reasonably to the risk, even if the harm ultimately was not averted. Id. at 617-18 (citations and internal quotations omitted).

In his Complaint, Plaintiff has alleged facts indicating that these Defendants had knowledge of an impending risk of serious harm to him and they failed to respond reasonably to that risk. Plaintiff has sufficiently plead a basis for deliberate indifference. Therefore, Defendant Wood and Defendant Harden's Motion to Dismiss is due to be denied.

Therefore,

It is now

**ORDERED AND ADJUDGED:**

1. Defendants' January 6, 2012, Motion to Dismiss (Doc. #19) is **GRANTED WITH RESPECT TO THE FOLLOWING:** (1) the claim that

15

officers paid Robert Olin to assault Plaintiff Oliver based on Plaintiff's failure to exhaust his administrative remedies with respect to that claim, and (2) any claim against Defendant Brown based on Plaintiff's failure to state any allegations against Defendant Brown in the body of the Complaint. In all other respects, the Motion to Dismiss (Doc. #19) is **DENIED**.

2. **Defendant Brown** is hereby **DISMISSED** from this action without prejudice.

3. **Defendants Harden, Reddish, Wood, and Swain** shall respond to the Complaint within **TWENTY-ONE (21) DAYS** from the date of this order.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of August, 2012.

ROY B. DALTON, JR.
United States District Judge

sa 8/13
c:
Warren Oliver
Ass't A.G. (Stubbs)