UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WARREN OLIVER,
Plaintiff

v.                                                          Case No. 3:11-CV-964-J-37MCR

OFFICER, HARDEN, et, al
Defendants

## PLAINTIFF RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Plaintiff submits this response to defendants motion for summary judgment. Because defendants have failed to meet their burden of demonstrating the there is no dispute as to any material fact, and because the facts set forth in plaintiff statements of material facts and the evidence show that defendants violated his clearly established constitutional rights this court should deny defendants motion. The committee, stated that "(W)here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no apposing matter presented because respondent did not meet its initial burden of establishing the absence of white screen in front of the officer station and day room, and not supervising the inmates on close management (c/m) when a lot of inmates were being assaulted and fights occurred. 1. Defendants are not entitled to qualified immunity, defendants argue that the doctrine of qualified immunity shields them from liability for their decision to subject plaintiff to cruel and unusual punishment while attending day room on 5-7-11 and other dates at Union Correctional Institution. As the Supreme Court has explained, "qualified immunity seeks to ensure that the defendants reasonably can anticipate when their conduct may give rise to

1

liability, by attaching liability only if [t]he contours of the rights [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." United States v. Lanier, 520 U.S. 259, 270 (1997), this is not to say that an official action is protected by qualified immunity unless the very in question has been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987), Here, it was apparent by May 7, 2001 that the Eighth Amendment prohibited defendants from subjecting the plaintiff to the inhumane conditions of confinement Lamarca v. Turner, 995.F.2d 1526, 1536-38, Farmer v. Brennan, 511 U.S. 825, 828 (1994), Braddy v. Fla. Dept of Labor and Emp't sec, 133 F.3d 797, 802 (11th cir. 1998).  To prevail on a Eighth Amendment claim for damages brought under section 1983, the plaintiff must prove three elements (1) a condition of confinement that inflicted unnecessary pain or suffering, Rohodes v. Chapman, 452 U.S. 337, 347 (2) the defendants "deliberate indifference" to that condition, Wilson v. Seiter,501 U.S. 294 (3) causation, Williams v. Bennett, 689 F.2d 1370, 1389 (11th cir. 1982). Gamble,429 U.S. at 102, Duckworth v. Frazen,780 F.2d 645, 652 (9th cir. 1985).  Mere knowledge of the infirm conditions persisting at U.C.I. does not establish deliberate indifference. Plaintiff must also demonstrate that, with knowledge of the infirm conditions defendants knowingly or recklessly declined to take action that would have improved the conditions.  In rebuttal, the plaintiff presented evidence (1) that Warden Reddish and Captain Swain failed to ensure that their direct subordinates follow the policies that was established Ch. 33-602.220 (d) unobstructed observation by staff in confinement and (2) of specific, low-cost actions that Warden Reddish could have taken and that his successors successfully undertook.  This evidence supports a finding that Warden Reddish knowingly fail[ed] adequately to supervise correctional officers up to the lieutenant and captain level resulting in corruption and incompetence among

the officers and lack of reasonable protection of inmates, <u>Lamarca v. Turner, 662 F. Supp at 655</u> [Warden Reddish] failure to supervise staff and administer measures which would minimize the chance of error and maximize the full satisfaction of constitutional protection, permitting the obscuring of vision of the inmates in the day room by allowing a white screen in front of the officer station and day room and not the proper supervision when assaults and fights occurred in the day room.   [Warden Reddish] shocking failure to employ any standard procedure to investigate some incidents of assaults and fights.  <u>Zatler v. Wainwright, 802 F.2d 397, 401 (11th cir. 1986), Rizzo, 423 U.S. at 375-76, 96 S.Ct at 606</u> This is not to say that plaintiff need not show a casual link between the constitutional infirm conditions and the injuries.  Rather the finding that a prison condition offends the Eighth Amendment presupposes the district likelihood that the harm threatened will result.  The wrong in Eighth Amendment cases is the deliberate indifference to a constitutional infirm condition, that wrong must, in turn have been the prominent cause of the plaintiff injuries, here the injuries brought about by the assaults.  <u>Doe v. Sullivan County, 956 F.2d 545</u> (6th cir) Close management (c/m) is for violent and dangerous inmates with a history of assaults, fights and other disciplinary problems.  So the officials are required to have a close watch on the inmates while they are outside of their cells, in other words, Oliver was not required to show that defendants knew "precisely who would attack whom" ,but only that the officials had subjective knowledge of a generalized substantial risk of serious harm from violence.  We find the evidence sufficient to allow a jury reasonably to conclude that Oliver met this standard.  <u>Hale v. Tallapoose County 50 F.3d 1579</u> (Ala. 1995) <u>Lamarca v. Turner, 995 F.2d 1526, 1536-38, Horton v. U.S. 70 F.3d 397, Farmer v. Brennan, 511 .us. 825, 828.</u>  It also, however, demonstrate a commitment to the principles underlying the Eighth Amendment the cruel and unusual punishment clause was not adopted to protect prison

officials with arguably benign intentions from lawsuits. Eighth Amendment guarantees each

prisoner that reasonable measures will be taken to ensure his safety. Where a prisoner can prove

that no such reasonable steps here taken and, as a result, he experienced pain and suffering

without any penalogical justification, the Eighth Amendment is violated regardless of whether

there is an easily identifiable wrong doer with poor intentions. Prisoners are not required to live

in a violent state of nature where brutal attacks are ignored. To demonstrate such an extreme

deprivation, a prisoner must allege a physical and emotional injury resulting from the challenged

condition or demonstrate a substantial risk of such harm from the prisoners exposure to

challenged conditions. De"Lonta v. Angelone, 330 F.3d 630, 634, Helling v. Mc Kinney, 509

U.S. 25 (1993), Esotelle v. gamble, 429 U.S. 97 (1976), Daskalea v. District of Columbia, 227

F.3d 433, Sckwenk v. Hartford, 204 F.3d 1187, 1196-97 In discharge of duty of protection and

safe keeping of prisoners, officers at state and federal prisons must exercise ordinary diligence to

keep prisoners safe and free from harm, Bourgeous, 375 F.Supp. 133, Jensen, 94 F.3d 119,

prison authorities must protect against sufficiently imminent dangers that are likely to cause

harm in next week, month or year, Horton v. U.S. 70 F.3d 397, Peate v. Mcann, 294 F.3d 879,

plaintiff went to the day room the next day after the incident occurred and Officer Woods and

Harden was there May 7, 2011 and May 8,2011. They had stated if they knew that plaintiff and

Ohlin had problems they wouldn't let them attend day room together any more, but they did.

Case law of Eleventh Circuit clearly established that prison guards total failure to supervise

known violent inmates housed for mentally ill inmates was unconstitutional deliberate

indifference to Fourth and Eighth Amendment right of inmate who was assaulted by following

violent schizophrenic outburst, thus guards were not entitled to qualified immunity. Supervisory

liability under > 1983 occurs either when supervisors personally participates in the alleged

unconstitutional conduct or when there is casual connection between actions of supervising official and alleged constitutional deprivation; necessary causal connection can be established when history of widespread abuse put responsible supervisor on notice of need to correct alleged deprivation and fails to do so, or alternatively when supervisor's custom or policy results in deliberate indifference to constitutional rights of facts support indifference that supervisor's direct subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. Brown v. Crawford, 906 F.2d 667 (11th cir. 1990), Keating v. City of Miami, 598 F.3d 753, 765, Saucier v. Katz U.S. 194 (2001), Hardy v. District of Columbia, 601 F.Supp. 2nd 182 (D.C. Dist. 2009), Harlow v. Fitzgerald, 457 U.S. 800 (1982) to receive qualified immunity from liability for civil right violation government official first prove that he was acting within discretionary authority, once government official does this, burden shifts to show that official is not entitled to qualified immunity. Under two-part test to demonstrate applicability of qualified immunity, threshold inquiry is whether plaintiff allegations if true establish a constitutional violation; if they do, next sequential step is to ask whether the right was clearly established. Farmer v. Brennan, 511 U.S. 825, 834, 844-845, 114 S.Ct. 1970, 128 L.Ed.2nd 811 (1994), Marsh, 268 F.3d at 1028, Lamarca v. Turner, 995 F.2d 1526, 1536-38, Valdes v. Crosby, 450 F.3d 1231 (11th cir. 2006), Ashcroft v. Igbal, 129 S.Ct. 1937 (2009), Rodrigues v. Sec'y for the Dept of Corr, 508 F.3d 611, 616-17 (11th cir. 2007), American Federation of Labor and Congress of Indus. Organization v. City of Miami, Fl, 637 F.3d 1178, 1190 (11th cir. 2011), plaintiff would have had more evidence on the wide history of abuse, but the judge stated that the plaintiff should narrow down his request for documents and plaintiff listened to what the judge considered him to do, document 78 Oct. 17, 2012, Warden Berry Reddish and Captain Swain knew about risks according to Mr. Russ Pridgeon it was 233

disciplinary reports written for assaults and fights from June 2009 to May 2011, and Warden

Berry Reddish and Captain Swain had the final approval on those DR infractions. A lot of fights

and assaults were not investigated or documented, defendants claims its no policy to supervise

the inmates every move and sound, but it is required when they are housing mentally ill and

violent inmates on close management (c/m) that's what c/m stands for heavy supervision of those

type of inmate, and the Eleventh Court of Appeals requires this. Inmate Robert Ohlins has more

violent attacks as when he was housed at Brevard C.I. Plaintiff had requested those documents,

but counsel for defendants did not give them to him. Inmate Robert Ohlin has two (2) assaults

on correctional officers also. A lot of inmates had submitted grievances but the staff were taking

them out of the grievance box for those assaults and fights and they had notified the warden on

that issue, plaintiff witnesses will attest to this. Captain Swain came by; this was when he was a

Lt. Swain with the grievance box and plaintiff place a grievance in the box so Lt. Swain had

stated, "Are you snitching on my officers?" Plaintiff had stated, "if your officers can write us up,

so we can write them up also." Lt. Swain then stated, "When you come out of that cell I am

going to have my officers beat your ass." Plaintiff had asked defendants for internal staff reports

and external investigations about inmate on inmate assaults and fights, but defendants would not

give them to him that's why he doesn't have them like in Lamarca v. Turner, 995 F.2d

1526,1536-38, but he has Warden Berry Reddish final approval on the DR's so he knew about

the problems at Union C.I. These assaults were in other dorms also with the white screen up in

front of the officers station and day room with the lack of supervision. All of the defendant's

failed to take reasonable measures to abate this wide spread of abuse that was going on at Union

C.I.; that they knew about. If a male officer was there supervising us in the day room, a white

screen shouldn't been there to prevent the lewd acts, because it would of not been any lewd acts

to perform in the presence of the male officer.  An inmate is not going to perform any type of act while a male guard is present.  So apparently no male officer was present to supervise the inmates in the day room, like they had mention clearly, that they monitor the day room every thirty (30) minutes.  The white screen is for non-security staff as the Union C.I. policy indicates, not for security and the female officers are security.  Plaintiff was not placed on the 1-6 list, in order to be place on the 1-6 list he has to receive a infraction at Union C.I. for that.  Plaintiff did not receive a DR for that at Union C.I. to have his cell cover up and the policy states cells not day room, and everyone in the day room doesn't have a DR for 1-6.  the officers will leave the shields on the inmates cells after non-security staff has left the wing, plaintiff witnesses will attest to this also.  Inmates can't tamper with the white screen because it's a door that we are behind to do anything to it.  The assault that John Pino had committed, he had the full restraints on him like security was placing on us while attending day room.  When plaintiff was assaulted it took security a while to take him to medical for treatment, they had left him in the holding cell by himself and the rule states no inmate should be left alone when a emergency occurs Ch.33-602.005(d).  So plaintiff had to wait a while to go to medical for his medical emergency and he was suffering and bleeding bad.  They did not let plaintiff press charges on Robert Ohlin and he had submitted requests to them, plus the Attorney General office to file charges in which it's included with the complaint.  Robert Ohlin is a white inmate and the plaintiff is a black inmate and if plaintiff would of assaulted Robert Olhin with his handcuffs the administrations would of came and asked him if he wants to press charges like they always do.  Union C.I. is a racist institution you can tell by the telephone conversations Robert Ohlin had with his family members, that a officer or some officers made those racial

statements to him about plaintiff. Officer Justin C. Altsatt who heard yelling is a training officer (TA) and suppose to have a certified officer with him. The (TA) say he heard yelling what about the defendants, where were they? And they didn't hear yelling, or respond to the incident and wasn't supervising the day room? A (TA) is not required to write a disciplinary report, he can just be a witness because he isn't certified and must be with a certified officer on all occasions. Officer Justin C. Altsatt didn't hear any yelling until he was close to the day room, because no one can hear from the back on the wings, down stairs or officer station. Justin C. Altsatt wasn't supervising the day room either, it was a total of four officers who was working and wasn't supervising the inmates in the day room, and left inmates in the day room unsupervised. An officer suppose to stand there until every inmate is safely back in their cells and this wasn't the case, where Union C.I. is a violent environment with mentally ill inmates, with a history of violent behavior. Plaintiff was injured badly and he told the nurse he needs stitches and she did not give plaintiff any, and the nurse in o-dorm kept giving plaintiff band aids and other things to keep him from bleeding from his wounds, and plaintiff has a permanent injury in his eyes he had his vision change and received some eye glasses from the arm assault, plaintiff suffered pain and mental emotionally distress. <u>Perez v. United States, 330 F.App'x 388, 389</u> (3rd cir. 2009), <u>Daskalea v. District of Columbia, 1227 F.3d 433, Sekstenk v. Hartford, 204 F.3d 1187, 1196-97</u> and his exhibits will confirm to this. When plaintiff signed up for sick-call at F.S.P. he was having problems with some nurses that was covering up a lot of abuses that was going on at F.S.P and Union C.I., his exhibits will confirm this. Plaintiff does meet the requirements of 42 U.S.C. 1997 e (e) from the Eleventh Court of Appeals. The females at every institution will let inmates look directly at them and masturbate, but when someone

8

else sees them masturbating toward the female staff of officers that's when the females will say something about it; sometimes the females will lie on the inmates for no apparent reason at all. Plaintiff exhibit will attest to this also. F DOC will try to cover this up and blame everything on the inmates when they know its females that's letting inmates do all of these behaviors. Plaintiff will testify about all of this. Defendants must generally do more than allege that plaintiff failed to prove his case, <u>Celotel v. Catrett, 477 U.S. 323-24 at 328</u>. When a judge considers a Motion for Summary Judgment he or she is suppose to view the evidence submitted by both sides "in light favorable to the party opposing the motion." <u>Adicks v. S.H. Kress and Co; U.S. 144, 157, 168.</u> Attached is all of plaintiff exhibits to his opposing Motion for Summary Judgment.

Respectfully Submitted,

/s/ _Warren Oliver_
Warren Oliver

## Conclusion

For all the above reasons, defendant Motion for Summary Judgment should be denied.

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy has been furnished to : Office of the Attorney General, PL 01 The Capital, Tallahassee, FL 32399-1050.

Executed _____8th_____ day of _May_ 2013.